Brooks Equipment and Manufacturing Company v. Commissioner.Brooks Equip. & Mfg. Co. v. CommissionerDocket No. 12981.United States Tax Court1948 Tax Ct. Memo LEXIS 217; 7 T.C.M. (CCH) 225; T.C.M. (RIA) 48058; April 13, 1948*217 Geo. E. H. Goodner, Esq., Munsey Bldg., Washington, D.C., for the petitioner. Newman A. Townsend, Jr., Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in petitioner's income tax, declared value excess-profits tax and excess profits tax, as follows: DeclaredIncomevalue excessExcessYeartaxprofits taxprofits tax1942$1,571.34$24,825.4119431,250.7326,275.501944$9,357.53707.7717,018.93The petitioner claims overpayment of excess profits tax for the year 1942 in the sum of $7,840.13. At the hearing an amendment to the position was filed alleging that petitioner's net taxable income for the year 1944 was understated in the deficiency notice in the sum of $14,060. In his answer to the amended petition respondent admits the understatement and requests a determination of deficiencies in income, declared value excess-profits and excess profits taxes, for the year 1944, in the respective amounts of $9,357.53, $1,635.73 and $28,246.82. The questions presented for consideration of this Court are: (1) did the respondent properly disallow part of the deduction claimed by petitioner in 1942, 1943 and 1944, for salaries paid to certain of *218 its officers, and (2) did the respondent properly disallow the deduction of $93.75, claimed by petitioner in 1943 on account of delinquency penalty paid for the late filing of its capital stock tax return. At the hearing other issues raised by the pleadings were either waived by the petitioner, stipulated by the parties, or, by agreement, are to be settled on recomputation under Rule 50. Findings of Fact The petitioner is a corporation whose principal place of business is located in Knoxville, Tennessee. Its books are kept and its federal income and excess profits tax returns are filed on an accrual basis of accounting and by calendar years. The returns for the years 1942, 1943 and 1944, here involved, were all filed with the collector of internal revenue for the district of Tennessee. The petitioner was organized December 31, 1937, by merger of two existing corporations, Day Pulverizing Company and Brooks-Payne-Osborne Equipment Company. The Day Pulverizing Company was a Tennessee corporation organized in 1916, with its principal place of business at Knoxville, Tennessee. From the date of its organization until December 31, 1937, it was engaged in the business of manufacturing and *219 selling limestone pulverizers and trucks and conveyors used in connection with the pulverizers. The Brooks-Payne-Osborne Equipment Company was a Tennessee corporation organized in 1933, with its principal place of business at Knoxville, Tennessee. From the date of its organization until December 31, 1937, it was engaged in selling quarry, construction, road building, and contractors' equipment. Under the merger the stockholders of the old companies received stock in petitioner in the same proportion as they had held stock in the old companies and petitioner continued to carry on the business of the old companies in the same manner as had been done in the past. Throughout the years 1942, 1943 and 1944, petitioner operated a business of manufacturing and selling heavy equipment used for pulverizing, road building, and other such purposes. It occupied a plant consisting of six buildings which contained a total of over 12,000 square feet of floor space in its manufacturing department. It employed from 30 to 40 persons in its Knoxville plant and maintained an export office in New York City. In the latter part of 1943 and 1944, the petitioner operated a branch sales agency in Chattanooga, *220 Tennessee, for the International Harvester Company. Among the products of some twenty companies sold by the petitioner in the taxable years in question were the Lynn truck; Euclid truck; Adams Motor graders; Bucyrus-Erie bulldozers, scrapers and shovels, and International Harvester tractors and motors. The petitioner also sold load luggers and pulverizers or crushers which it manufactured. It had eight or nine men on its sales force. The products sold by the petitioner but manufactured by other firms were sold throughout the middle and eastern part of Tennessee. In earlier years load luggers and pulverizers manufactured by petitioner were sold abroad, as well as throughout the United States. During 1942, 1943 and 1944, however, war conditions to a certain extent restricted the export market and only a limited number of these machines were sold outside the United States. The petitioner advertizes its manufactured products in trade journals covering the United States and Canada and also in the American Exporter. During the taxable years here involved the officers of petitioner, their terms of service and the total remuneration paid to each of them were as follows: RemunerationOffice and NameTerm194219431944Pres. and Gen. Mgr. - E. N. Brooks7-26-41 - 12-31-44$40,200.00$40,200.00$40,200.00Ex. Vice Pres. and Treas. - Karl R. Martin7-26-41 - 10- 1-4433,000.0033,000.0024,750.00Secy. - Dorothy B. Kirby7-26-41 - 12-31-4415,000.0015,000.0015,000.00Vice Pres. - Helen H. Brooks10- 2-44 - 12-31-443,225.00Vice Pres. - R. S. Tucker1940 to 12-31-4421,595.2417,606.5420,070.77Asst. Secy. and Asst. Treas. - Richard G. Howe7-26-41 - 1- -437,662.50337.50Treas. - H. C. Hutsell10-10-44 - 12-31-441,333.33Of *221 the salaries paid as set forth in the preceding paragraph, respondent disallowed a part of the amounts paid to the persons and to the extent set forth, as follows: Officer194219431944E. N. Brooks$13,200.00$13,200.00$17,700.00Karl R. Martin9,000.009,000.0011,250.00Dorothy B. Kirby9,000.009,000.0010,200.00Helen H. Brooks2,775.00Total$31,200.00$31,200.00$41,925.00During the three years in question there were 1,000 shares of petitioner's capital stock outstanding held as follows: StockholderSharesE. N. Brooks760Karl R. Martin120Dorothy B. Kirby120 Dorothy B. Kirby acquired her stock in 1941 from Karl R. Martin, who had originally acquired his stock in 1939. This stock was purchased by Mrs. Kirby with her own funds, supplemented by some money advanced to her by her husband. These stockholders served as directors. Of the products sold by petitioner for other concerns a substantial amount was sold on a commission basis and in such cases the goods were shipped direct from the manufacturer to the purchaser, and petitioner then received a check for its commissions on the sales. Its books do not show the sale price of such goods. The commissions received by the petitioner on sales of this type *222 ranged from 7 1/2 per cent to 20 per cent, the average being at least 10 per cent. In the table set forth below the commissions received in each of the years 1938 to 1944, inclusive, as shown by the books, have been multiplied by ten to show the approximate or estimated sales value of articles sold on a commission basis each year, and the totals of such estimated commission sales have been added to the sales shown on the books to show the entire volume of sales handled by petitioner in those years. The total remuneration paid all officers each year, as shown by petitioner's books, is followed by the percentage which the payment to officers bears each year to the total sales for each year. These figures are as follows: 1938193919401941Commissions received$ 5,956.31$ 20,736.40$ 25,390.12$ 42,564.02Sales value of itemson which commissions re-ceived59,563.00207,360.00253,900.00425,640.00Net sales per books331,307.82822,638.931,219,588.141,442,632.70Total real sales390,870.821,029,998.931,473,488.141,868,272.70Total remuneration toofficers27,289.1576,146.75116,175.00121,211.37Percentage of salaries tosales7.07.47.96.5194219431944Commissions received$ 12,512.08$ 88,827.44$ 24,438.93Sales value of items onwhich commissions received125,120.00888,270.00244,380.00Net sales per books1,983,369.13820,588.861,035,942.42Total real sales2,108,489.131,708,858.861,280,322.42Total remuneration toofficers117,457.74106,144.04104,579.10Percentage of salariesto sales5.66.28.2Wallace *223 Brooks, a brother of E. N. Brooks, served as president of the petitioner from the time of its organization until July 21, 1941. He had formerly been president of Brooks-Payne-Osborne Equipment Company in which E. N. Brooks was an associate. After the petitioner's organization he devoted his time primarily to the selling end of the business, while E. N. Brooks devoted his time, primarily, to production and engineering. Wallace Brooks died on July 21, 1941, and thereafter the duties and responsibilities formerly borne by him were shifted largely to E. N. Brooks, who became petitioner's president, Karl R. Martin and Dorothy B. Kirby. E. N. Brooks started in business in 1918 and six years later bought control of Day Pulverizing Company, which, at that time, was manufacturing only one product, a limestone pulverizer. He developed several important improvements relating to the pulverizer and in 1926 a patent was issued covering one of his inventions which he assigned to the company without consideration. The improvements covered by the patent resulted in increased sales for the company. The company, or the petitioner, has used the patent ever since that time without payment of any royalties *224 or other remuneration to Brooks. In addition to the limestone pulverizers or crushers, petitioner manufactured and sold the Brooks load lugger. The load lugger is a hydraulic hoist which is installed on the chassis of a standard truck and used to handle and transport detachable buckets which can be loaded on the ground and then placed on a truck chassis by means of the hydraulic hoist. It was designed and patented by Wallace Brooks and has been manufactured by the petitioner since 1938. It has been a popular and important item in the line of machinery sold by the petitioner and has accounted for a considerable volume of sales. Many of these load luggers have been sold abroad, a few having been shipped during the war years. Since the merger in 1938, petitioner has added new lines and expanded its business and maintains a repair department and an engineering department for the designing and construction of conveyor and mine equipment. During all of the taxable years involved E. N. Brooks served as petitioner's president and general manager. He supervised the manufacturing, purchasing, shipping, selling, inspecting, financing and personnel. He devoted long hours to the business without *225 vacation. In supervising the purchasing department he at times secured certain merchandise at favorable prices which increased petitioner's earnings, and by arrangement of the spacing of various departments he effected economies in petitioner's business operations. Between 1924 and 1934, while with Day Pulverizing Company, his withdrawals for compensation were comparatively low, ranging for several years from $1,800 to $3,400 per year. For the years 1936 and 1937, he received compensation of $10,850 and $7,060, respectively. During all of the taxable years in question, except the last three months of 1944, Karl R. Martin was petitioner's executive vicepresident and treasurer. His duties as treasurer included the handling of credits, notes, and accounts. He also called on some of the manufacturers represented by petitioner and assisted to some extent in selling. His salary of $33,000 per year was approved by petitioner's board of directors. He resigned his position with petitioner in October 1944 to go into business for himself, selling merchandise in competition with petitioner. Dorothy B. Kirby was petitioner's secretary in 1942, 1943 and 1944. She is a sister of E. N. Brooks and *226 in 1942 was 29 years of age. Her employment in the business started with the Day Pulverizing Company in 1931, shortly after she had graduated from high school. She had attended business college for a short time after completing her high school course and was first employed by the Day Pulverizing Company as a stenographer at a salary of $50 a month. Later, she was employed by the Brooks-Payne-Osborne Equipment Company and, after the merger, by the petitioner. From 1938 to 1941, she was private secretary to Wallace Brooks and served as office manager of the petitioner. Her salary just prior to 1941 was about $3,500 per year. After the death of Wallace Brooks in July 1941, she was elected secretary of the petitioner and during the taxable years involved acted as office manager and confidential secretary to E. N. Brooks and R. S. Tucker. She made contacts with and assisted in the entertainment of customers of the petitioner and manufacturers represented by the petitioner. She had charge of all advertising, the larger part of which was prepared by her or under her supervision and direction. Among her other duties were those of routing mail, interviewing office personnel, purchasing office *227 supplies, and answering correspondence when necessary. The salary paid to her during the taxable years involved was fixed by the board of directors without any request being made by her for an increase. Helen H. Brooks, the wife of E. N. Brooks, became a vice-president of the petitioner following the resignation of Karl R. Martin on October 1, 1944. At the time of Martin's resignation two of petitioner's bookkeepers also resigned. On account of war conditions it was difficult to obtain competent clerical help and since Mrs. Brooks was more or less familiar with petitioner's affairs, she was employed to perform certain duties in the accounting department. She was a graduate of Knoxville Business College and for about ten years prior to her marriage had held responsible office positions. When she took over her position with petitioner she was by education, training and experience familiar with the work to be done. She devoted full time to the duties of her position with petitioner, sometimes taking work home with her, and she performed all of her duties efficiently. She served only during the last three months of the taxable year 1944, and thereafter only until she could be replaced. *228 The board of directors approved her salary of $1,075 per month for the three-month period involved. On or before March 15, 1943, petitioner filed tentative federal income and excess profits tax returns for the year 1942 and obtained an extension of time to May 15, 1943, within which to file the completed returns. The returns were filed within the time allowed. Petitioner's income and excess profits tax returns for 1943 and 1944 were filed on June 15, 1944, and April 6, 1945, respectively. The taxes shown to be due on these returns and the dates of payment are as follows: Income and Declared ValueExcess-Profits TaxesIncomeDV Ex.PaymentYearTaxProf. TaxDateAmountTaxDateAmount1942$12,161.693-15-43$4,000.00$65,996.653-15-43$3,499.177-12-432,080.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,000.009-22-433,040.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,499.1712-18-433,040.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,499.1712-18-4316,499.14194312,161.693-24-44722.723,054.563-24-441,527.286-20-445,585.639-19-44763.649-19-442,926.6712-15-44763.6412-15-442,926.6719445,454.163-15-453,000.006-16-45818.069-14-45818.0512-12-45818.05 On June 8, 1943, petitioner paid $34.99 as interest due to late payment of a portion of its tax for 1942. On November 5, 1945, petitioner filed on Treasury Department *229 Form 843 a claim for refund for 1942 of $7,840.13, and other amounts that may legally become due based on an unused excess profits credit carryback from 1944 of $9,679.16. No part of the excess profits tax paid by the petitioner for 1942 has been refunded. Petitioner filed its 1943 capital stock tax return after July 31, 1943, the last day provided by law for such filing, and became liable for a 15 per cent penalty of $93.75. The petitioner paid this delinquency penalty within the year 1943 and took the amount as a deduction from income in his income tax return filed for 1943. Respondent has disallowed this deduction. The parties have stipulated that in preparing its closing inventory for 1944 petitioner failed to extend one item with the result that its inventory was understated by the amount of $14,060. The petitioner's closing inventory for 1944 should, therefore, be increased by $14,060 and its net income for 1944 should accordingly be increased in the same amount. Petitioner's income and declared value excess-profits tax returns on Form 1120, for the years 1942, 1943 and 1944, disclose the following: 1942Sales: New equipment$1,218,193.50Used equipment127,867.38Parts and supplies466,170.42Manufactured products167,609.04Equipment rentals47,799.49Total gross sales$2,027,639.83Less: Returns and allowances44,270.70Net sales1,983,369.13Less: Cost of goods sold1,552,380.91Gross profit on sales430,988.22Plus: Other incomeCommissions received12,512.08Interest received1,813.51Purchase discounts32,584.40Miscellaneous income2,666.61Total49,576.60Gross income$480,564.82Less: Compensation of officers117,457.74Other deductions246,419.01Total363,876.75Net income116,688.071943Sales: New equipment183,347.91Used equipment51,425.90Parts and supplies507,448.05Manufactured products96,225.96Equipment rentals5,875.89Total gross sales844,323.71Less: Returns and allowances23,734.85Net sales820,588.86Less: Cost of goods sold622,760.77Gross profit on sales197,828.09Plus: Other incomeCommissions received88,827.44Purchase discounts9,203.35Interest received12.66Miscellaneous income82.10Total98,125.55Gross income295,953.64Less: Compensation of officers106,144.04Other deductions151,204.91Total257,348.95Net income38,604.691944Sales: New equipment$442,688.51Used equipment27,235.31Parts and supplies488,928.92Manufactured products100,527.68Equipment rentals3,716.50Total gross sales$1,063,096.92Less: Returns and allowances27,154.50Net sales1,035,942.42Less: Cost of goods sold816,485.07Gross profit on sales$ 219,457.35Plus: Other incomeCommissions received$ 24,438.93Interest received91.94Purchase discounts23,836.02Total$ 48,366.89Gross income$267,824.24Less: Compensation of officers$104,579.10Other deductions142,713.57Total247,292.67Net income$ 20,531.57* (34,591.57)*230 Balance SheetDecember 31, 1941AssetsCash$ 13,759.83Other current assets267,421.18Total current assets$281,181.01Other assets12,841.68Investments205.50Fixed assets70,703.50Deferred assets3,373.32Total$368,305.01Liabilities and net worthCurrent Liabilities$237,072.90Long term liabilities4,000.00Net worthCapital stock$100,000.00Surplus27,232.11Total127,232.11Total$368,305.01Balance SheetDecember 31, 1942AssetsCash$ 18,132.02Other current assets276,123.67Total$294,255.69Other assets2,482.73Investments265.50Fixed assets69,333.29Deferred assets672.07Total$367,009.28Liabilities and net worthCurrent liabilities246,354.66Long term liabilities0Net worthCapital stock100,000.00Surplus20,654.62Total120,654.62Total$367,009.28Balance SheetDecember 31, 1943AssetsCash$ 34,365.21Other current assets302,152.86Total$336,518.07Other assets1,039.86Investments423.20Fixed assets67,709.83Deferred assets1,117.32Total$406,808.28Liabilities and net worthCurrent liabilities265,367.12Net worthCapital stock100,000.00Surplus41,441.16Total141,441.16Total$406,808.28Balance SheetDecember 31, 1944AssetsCash$ 22,448.45Other current assets210,485.86Total$232,934.31Other assets1,489.47Investments868.50Fixed assets66,882.88Deferred assets763.45Total$302,938.61Liabilities and net worthCurrent liabilities150,509.29Net worthCapital stock100,000.00Surplus52,429.32Total152,429.32Total$302,938.61*231 In 1942, the petitioner paid a dividend to stockholders totaling $5,000. No dividend was paid in 1943 or 1944. Opinion LEMIRE, Judge: The principal question involved in this case is whether the salaries paid by petitioner to its officers, E. N. Brooks, Karl R. Martin, Dorothy B. Kirby and Helen H. Brooks, during the years 1942, 1943 and 1944, were reasonable in amount and constituted proper business expense deductions. The respondent has determined that the salaries were all excessive and has disallowed a considerable portion thereof. The evidence shows that the petitioner's business was built up from a very small beginning to one of considerable magnitude by E. N. Brooks and his brother, Wallace Brooks. They owned the greater portion of the stock and managed and controlled the business. The success of the business is attributed largely to their ability and industry. They were associated together for a number of years in the operation of the Day Pulverizing Company. In 1933 the Brooks-Payne-Osborne Equipment Company was organized and from that time until petitioner's organization Wallace Brooks was in charge of and operated that company. As president of the petitioner, Wallace Brooks *232 had charge of sales, purchases, advertising and personnel, and E. N. Brooks, as vicepresident and general manager, devoted most of his time to the management of the manufacturing and repair shop. After the death of Wallace Brooks, E. N. Brooks took over the entire supervision and management of the business. His duties and responsibilities materially increased and the business of the company also increased during the years in question. Taking into consideration all of these factors, we believe that $36,000 a year is reasonable compensation for E. N. Brooks for the years 1942, 1943 and 1944. Karl R. Martin had been employed by Day Pulverizing Company for many years prior to its merger in the petitioner corporation. After the merger he continued in the business as an employee of the petitioner. He was familiar with all phases of the business and during the taxable years in question served as executive vice-president and treasurer. He handled collections, credits, notes and accounts and, after the death of Wallace Brooks, made some of the contacts with manufacturers and did some selling. He was a valuable man in the organization. The board of directors approved his salary of $33,000 per *233 year. Martin was not a relative of E. N. Brooks and his employment appears to have been an arm's length business transaction. We find that his salary at the rate of $33,000 per year was reasonable. Capitol-Barg Dry Cleaning Co. v. Commissioner, 131 Fed. (2d) 712. Dorothy B. Kirby was a sister of E. N. Brooks, the majority stockholder of the company. She owned 120 shares of the capital stock. She was elected secretary of the company after the death of Wallace Brooks. While the evidence shows that her duties and responsibilities were materially increased during the years in question, it is not sufficient to justify an increase in salary from $3,500 to $15,000 per year. We believe that all things considered $7,500 per year was the reasonable value of her services during the period in question and so hold. Helen H. Brooks was the wife of E. N. Brooks. Upon resignation of Karl R. Martin and other employees in September 1944, she was elected vice-president and was employed in the accounting department until other competent help could be obtained. Her salary for the months of October, November and December, 1944, only are [is] involved. Mrs. Brooks was familiar with the business and by *234 education, training and experience was qualified to fill the place at a time when competent and reliable help was hard to obtain. However, under the evidence in this case we are convinced that the petitioner would not have paid a stranger of similar qualifications a salary of $1,075 per month for the services which she rendered. Under all the circumstances, we believe that a salary of $500 per month would have been reasonable remuneration for such services, and we so find. The second question involved is whether the Commissioner's disallowance of the deduction of $93.75, delinquency penalty for late filing of capital stock tax return, was proper. The petitioner contends that this delinquency penalty is merely an additional tax deductible under section 23(c)(1) of the Internal Revenue Code, or is analogous to interest and deductible as a business expense under section 23(a)(1)(A). We cannot agree with petitioner's contention in this regard. The amount assessed under provisions of section 291(a) of the Internal Revenue Code for delay in filing capital stock tax returns is a penalty and not an additional tax or interest. New York v. Jersawit, 263 U.S. 493. Decision will be entered under *235 Rule 50. Footnotes*. It is stipulated by the parties that this is the amount of net income for 1944.↩